ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| **LOYDA COLÓN JIMÉNEZ**<br><br>Peticionaria<br><br>v.<br><br>**JOSÉ R. MELÉNDEZ FIGUEROA**<br><br>Recurrido | TA2026CE00261 | **CERTIORARI** procedente del Tribunal de Primera Instancia, Sala Superior de **Caguas**<br><br>Civil Núm.:<br>**E AL2025-0020**<br><br>Sobre:<br>Alimentos Locales |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Boria Vizcarrondo, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 28 de abril de 2026.

Comparece ante nos la señora Loyda Colón Jiménez (Sra. Colón Jiménez o peticionaria) y nos solicita que revoquemos una *Orden* emitida el 26 de enero de 2026 por el Tribunal de Primera Instancia (TPI), Sala Superior de Caguas.[1] Mediante dicho dictamen, el TPI aludió a la *Resolución* emitida el 15 de noviembre de 2024 por el foro primario, Sala Superior de Guayama,[2] y resolvió carecer de jurisdicción sobre la persona.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* y revocamos el dictamen recurrido.

### I.

El presente caso tiene su génesis el 10 de mayo de 2024 cuando la Sra. Colón Jiménez radicó una *Moción de revisión de pensión* contra el señor José R. Meléndez Figueroa (Sr. Meléndez

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC) del Tribunal de Apelaciones, Apéndice II. Notificada y archivada en autos el 29 de enero de 2026.
[2] *Íd.*, Apéndice XI. Notificada y archivada en autos el 20 de noviembre de 2024.

Figueroa o recurrido)- padre no custodio de la menor-[3] donde adujo que la pensión alimentaria fijada a $200.00 mensuales por el foro primario el 12 de febrero de 2013 y pagada mediante ASUME, no había sido revisada.[4] Esto es, aun cuando las necesidades de la menor-quien para el 2024 ostentaba 14 años- eran distintas y habían aumentado. Por tal razón, habiéndose transcurrido el término para su revisión, suplicó del TPI un referido urgente de la Examinadora de Pensiones Alimentarias para la revisión de dicha pensión. De igual modo, la Sra. Colón Jiménez informó al foro primario que el Sr. Meléndez Figueroa residía fuera de nuestra jurisdicción; es decir, en el Estado de Florida.

El 1 de julio de 2024, el Sr. Meléndez Figueroa presentó una *Urgente moción* donde alegó haber pagado una suma de $8,650.00 reclamada por la Sra. Colón Jiménez.[5]

Luego de múltiples trámites procesales, la Examinadora de Pensiones Alimentarias emitió un informe y sus recomendaciones el 12 de noviembre de 2024, después de celebrar una vista sobre el estado procesal del caso.[6] Expuso que le correspondía al Sr. Meléndez Figueroa aportar la cantidad de $426.00 mensuales en concepto de pensión alimentaria básica, conforme las *Guías mandatorias para fijar y modificar pensiones alimentarias en Puerto Rico* (Guías mandatorias), Departamento de la Familia, Núm. 9535, pág. 1; más una pensión suplementaria por el gasto de vivienda, educación y gastos extraordinarios recurrentes por la cantidad de $481.00 al mes. Asimismo, recomendó al foro primario denegar el acuerdo de las partes para fijar la pensión alimentaria a $500.00 mensuales a favor de la menor, y, en cambio, aumentara la misma a $907.00 al mes.

---

[3] *Íd.*
[4] *Íd.*, Apéndice III.
[5] *Íd.*, Apéndice V.
[6] *Íd.*, Apéndice XI.

El 15 de noviembre de 2024, el foro primario, Sala Superior de Guayama, emitió una *Resolución* donde acogió las recomendaciones de la examinadora y, en su consecuencia, aumentó la pensión a $907.00 mensuales.[7]

Subsiguientemente, el 25 de febrero de 2025, el foro primario, Sala Superior de Guayama, emitió una *Orden* en la que ordenó al Sr. Meléndez Figueroa a cumplir con el pago total de pensión alimentaria adeudada, dentro de un término perentorio de quince (15) días, so pena de señalar vista de desacato o de mostrar causa, y encontrarlo incurso en desacato y ordenar su arresto hasta el saldo total de la deuda.[8]

El 8 de mayo de 2025, la Sra. Colón Jiménez presentó una *Moción reiterando desacato e incumplimiento de orden* mediante la que planteó que el término dispuesto por el tribunal para cumplir con el pago de pensión venció, más el único pago realizado por el Sr. Meléndez Figueroa fue por la suma de $8,650.00. Por tal razón, a dicha fecha, él adeudaba $11,585.96.[9]

Posteriormente, la Sra. Colón Jiménez radicó una *Moción de reiterado desacato y solicitud de registrar orden de arresto en el Estado de la Florida, donde reside el demandado* el 6 de octubre de 2025.[10] Sostuvo que el 20 de agosto de 2025 se celebró una vista de desacato a la que el Sr. Meléndez Figueroa no compareció, y la deuda acumulada hasta octubre de 2025 era de $15,213.96.

Ante la presentación de dicha moción, el TPI, Sala Superior de Guayama, trasladó el caso a la Sala Superior de Caguas, conforme a la Regla 3.5 de Procedimiento Civil, 32 LPRA Ap. V., R. 3.5.[11]

Posteriormente, el 10 de noviembre de 2025, la Sra. Colón Jiménez presentó una *Moción reiterando desacato y solicitud de*

---

[7] *Íd.*
[8] *Íd.*, Apéndice XII.
[9] *Íd.*, Apéndice XIII.
[10] *Íd.*, Apéndice XIV.
[11] *Íd.*, Apéndice XV y XVI.

*registrar orden de arresto en el Estado de la Florida, donde reside el demandado* en la que alegó que la deuda acumulada era de $17,027.96.[12]

Sin embargo, el TPI, Sala Superior de Caguas, emitió una *Resolución* el 13 de noviembre de 2025 donde ordenó el archivo del caso y expuso que la controversia original fue adjudicada.[13] Además, en atención a la *Moción reiterando solicitud de registrar orden de arresto por desacato, en el Estado de la Florida, EE.UU.* el 23 de enero de 2026, de donde surge una presunta deuda de $18,841.96,[14] el foro primario emitió una *Orden* el 26 de enero de 2026. [15] Mediante esta, hizo referencia a la *Resolución* del 15 de noviembre de 2024 y dictaminó carecer de jurisdicción sobre la persona.

Inconforme, el 4 de febrero de 2026, la Sra. Colón Jiménez presentó una solicitud de reconsideración respecto a la determinación del 26 de enero de 2026,[16] empero fue denegada el 9 de febrero de 2026 por el foro *a quo*.[17]

Insatisfecha, la Sra. Colón Jiménez radicó ante nos un auto de *certiorari* el 3 de marzo de 2026 donde señaló al TPI por la comisión de los siguientes errores:

> **A. ERRÓ EL TPI, COMETIÓ ERROR CRASO EN DERECHO Y ABUSÓ DE SU DISCRECIÓN AL DECLARAR NO HA LUGAR LA RECONSIDERACIÓN PRESENTADA POR LA PETICIONARIA QUE REQUIRIÓ CONFORME A DERECHO CUMPLIR CON EL MÉTODO ADOPTADO EN PUERTO RICO PARA LOGRAR REGISTRAR EN EL ESTADO DE LA FLORIDA UNA ORDEN DE PENSION ALIMENTARIA, ORDEN POR DESACATO CIVIL Y ARRESTO CONTRA EL RECURRIDO Y DE ESA FORMA PODER EJECUTAR EL CUMPLIMIENTO DE LA ORDE[N] DE ALIMENTOS.**
>
> **B. ERRÓ EL TPI, ACTUÓ DE FORMA CAPRICHOSA Y COMETIÓ ERROR MANIFIESTO AL IGNORAR EL PROCEDIMIENTO PREVIO LLEVADO A CABO POR**

---

[12] *Íd.*, Apéndice XX.
[13] *Íd.*, Apéndice XIX; *Íd.*, Apéndice XVIII.
[14] *Íd.*, Apéndice XXVI.
[15] *Íd.*, Apéndice II.
[16] *Íd.*, Apéndice XXVII.
[17] *Íd.*, Apéndice I.

**EL TRIBUNAL SUPERIOR, SALA DE FAMILIA GUAYAMA QUE SIN DUDA ADQUIRIÓ JURISDICCIÓN SOBRE LA PERSONA DEL RECURRIDO Y CONCEDIÓ A LA PETICIONARIA EL DERECHO DE INSTAR EL MÉTODO PARA HACER VALER EN EL ESTADO DE LA FLORIDA UNA ORDEN DE DESACATO POR INCUMPLIR ALIMENTOS DE UNA MENOR.**

**C. ERRÓ EL TPI, ABUSÓ DE SU DISCRESIÓN Y COMETIÓ ERROR CRASO AL NEGARSE DICTAR ORDEN DE ARRESTO CONTRA EL RECURRIDO ALEGANDO CARECER DE JURISDICCIÓN, A PESAR DE QUE OTRO JUEZ DE IGUAL JERARQU[Í]A ADQUIRI[Ó] JURISDICCI[Ó]N SOBRE LA PERSONA, Y CON DICHA DETERMINACIÓN PRIVÓ A LA MENOR DE RECIBIR ALIMENTOS.**

**D. ERRÓ EL TPI, ABUSÓ DE SU DISCRESIÓN Y COMETIÓ CRASO ERROR AL NEGARSE DICTAR ORDEN DE ARRESTO CONTRA EL RECURRIDO ALEGANDO CARECER DE JURISDICCIÓN, A PESAR DE QUE EL TRIBUNAL SUPREMO ESTABLECIÓ QUE LOS FOROS DEL TRIBUNAL GENERAL DE JUSTICIA TIENEN LA AUTORIDAD PARA ORDENAR Y REGISTRAR EN OTRA JURISDICCIÓN UNA DETERMINACIÓN DE ARRESTO POR DESACATO CIVIL DIRIGIDA A UN PROGENITOR QUE HA INCUMPLIDO SU DEBER DE PRESTAR ALIMENTOS, CUANDO ESTE ÚLTIMO SE ENCUENTRE RESIDIENDO FUERA DE PUERTO RICO.**

A pesar de haberle brindado la oportunidad al Sr. Meléndez Figueroa, este no presentó su memorando en oposición a la expedición del auto de *certiorari*.

**II.**

**A.**

El auto de *certiorari* es el vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones realizadas por un foro inferior y cuya expedición descansa en la sana discreción del tribunal. *Rivera v. Arcos Dulces,* 212 DPR 194, 207 (2023); *McNeil Healthcare, LLC v. Municipio de Las Piedras,* 206 DPR 391, 403 (2021). La característica distintiva del auto de *certiorari* "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. El concepto *discreción* necesariamente implica la facultad de elegir entre diversas opciones". *IG Builders v. BBVAPR,* 185 DPR 307, 338 (2012) (énfasis

en el original). No obstante, " 'en el ámbito judicial, la discreción no debe hacer abstracción del resto del Derecho. . . . Es decir, [la] *discreción* es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera' ". *IG Builders v. BBVAPR*, *supra*, pág. 338 (citando a *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009)) (énfasis en el original); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).

En ese sentido, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), señala los criterios que debemos tomar en consideración al evaluar si procede expedir el auto de *certiorari. BPPR v. SLG Gómez-López,* 213 DPR 314, 336-337 (2023). La referida regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Lo anterior impone al Tribunal de Apelaciones la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento

del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro. Por tanto, de no estar presente ninguno de los criterios esbozados, procede que esta Curia se abstenga de expedir el auto solicitado. *Torres Martínez v. Torres Ghigliotty, supra*, págs. 96-97.

**B.**

En nuestro ordenamiento jurídico es harto conocido que los casos sobre alimentos menores están revestidos del más alto interés público. *Fonseca Zayas v. Rodríguez Meléndez*, 180 DPR 623, 632 (2011). La obligación alimentaria se fundamenta en el derecho constitucional a la vida y en la solidaridad familiar, y está consagrado en el *"Código Civil de Puerto Rico" de 2020*, Ley Núm. 55 del 1 de junio de 2020 (Código Civil de 2020), según enmendado, 3 LPRA secs. 5311 *et seq.* Véase, Art. II, Sec. 7, Const. PR, LPRA, Tomo 1; *Mundo v. Cervoni*, 115 DPR 422, 426 (1984); y en la *"Ley Orgánica de la Administración Para el Sustento De Menores"*, Ley Núm. 5 del 30 de diciembre de 1986 (Ley Núm. 5-1986), según enmendada, 8 LPRA secs. 501 *et seq.* (Exposición de Motivos). A esos efectos, nuestro máximo foro ha establecido que el derecho de toda persona " 'a disfrutar de un nivel de vida adecuado que asegure para sí y para su familia[,] la salud, el bienestar y especialmente *la alimentación*, el vestido, la vivienda, la asistencia médica y los servicios sociales necesarios' ". *Fonseca Zayas v. Rodríguez Meléndez, supra*, págs. 632-633 (*citando a Rodríguez Pagán v. Depto. Servicios Sociales*, 132 DPR 617, 631 (1993)). En este sentido, los alimentos son "todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia". Artículo 653 del Código Civil de 2020, *supra*, sec. 7531. Cuando el alimentista es menor de edad, esos alimentos incluyen también "su educación, las atenciones de previsión acomodadas a los usos y a las

circunstancias de su entorno familiar y social y los gastos extraordinarios para la atención de sus condiciones personales especiales". Artículo 653 del Código Civil de 2020, *supra*, sec. 7531.

Cónsono con lo anterior, "[l]os casos sobre alimentos de menores están revestidos del más alto interés público". Artículo 2 de las Guías mandatorias, *supra*, pág. 1. Asimismo, los menores poseen un derecho fundamental a recibir alimentos y los progenitores con patria potestad tienen una obligación de alimentar a sus hijos hasta que alcanzan la mayoría de edad u obtienen su emancipación. *Rodríguez Pagán v. Depto. Servicios Sociales, supra,* pág. 633; Reglas 589 y 590 del Código Civil de 2020, *supra,* secs. 7241-7242. Es meritorio mencionar que, "aunque los derechos de la patria potestad facultan a la persona custodia para reclamar el pago de las pensiones a nombre de sus hijos, el menor es el acreedor de la pensión alimentaria que finalmente se otorgue o acuerde". *Díaz Rodríguez v. García Neris,* 208 DPR 706, 720 (2022).

Ahora bien, la pensión alimentaria debe ser proporcional a los recursos de quien los provee y las necesidades de quien los recibe, y por ello, la pensión se reduce o aumenta en proporción a los recursos del alimentante y las necesidades de los hijos. *Fonseca Zayas v. Rodríguez Meléndez, supra,* pág. 634; *Pesquera Fuentes v. Colón Medina,* 202 DPR 93, 108 (2019). A tenor con este principio de proporcionalidad, se consideran recursos del alimentante, la posición social de la familia, y el estilo de vida del alimentante. *Fonseca Zayas v. Rodríguez Meléndez, supra,* pág. 634. De esta manera, se intenta poner al menor alimentista en la misma posición que ocuparía si la familia hubiera permanecido intacta, y ello se puede demostrar por medio de evidencia directa o circunstancial. *Fonseca Zayas v. Rodríguez Meléndez, supra,* pág. 634.

En aras de lograr que los padres o las personas legalmente responsables contribuyan a la manutención de sus hijos o

dependientes, la Asamblea Legislativa aprobó la Ley Núm. 5-1986, *supra*. Lo anterior, pues las tasas de divorcio han duplicado a partir del 1960 y "[e]l abandono de las obligaciones para con sus hijos, por parte de uno o ambos padres, es consecuencia del continuo deterioro de los valores sociales que culmina en la desintegración de la unidad familiar". Ley Núm. 5-1986, *supra* (Exposición de Motivos). También se adoptaron las Guías mandatorias, *supra*, pág. 1, para determinar las pensiones alimentarias de los menores de edad en Puerto Rico basadas en criterios numéricos y descriptivos facilitando el cómputo de la cuantía de la obligación alimentaria. Asimismo, una vez se emita una orden de pensión alimentaria, "cualquiera de las partes podrá solicitar o el Administrador por iniciativa propia [podrá] iniciar, el procedimiento de revisión, y de proceder, de modificación de una orden de pensión alimentaria en cualquier momento fuera del ciclo de tres (3) años, cuando existan cambios sustanciales en las circunstancias del alimentista, de la persona custodia o de la persona no custodia tales como variaciones o cambios significativos o imprevistos en los ingresos, en la capacidad de generar ingresos, en los egresos, gastos o capital de la persona custodia o de la persona no custodia, o en los gastos, necesidades o circunstancias del menor". Artículo 19(c) de la Ley Núm. 5-1986, *supra*, sec. 518. No obstante, hay instancias particulares en las que nuestro máximo foro ha reconocido la inaplicabilidad de las Guías mandatorias, *supra*, para el cómputo de las pensiones alimentarias; en particular, el alimentante no tiene que descubrir prueba sobre su situación económica al aceptar su capacidad para pagar la totalidad de la pensión alimentaria. *Díaz Rodríguez v. García Neris*, *supra*, pág. 719. En dichos casos, solo resta determinar la suma justa y razonable que debe ser impuesta como pensión, a tenor con el Código Civil de 2020, *supra*, y en consideración de la condición económica y el estilo de vida del

alimentante, junto a las necesidades del menor. *Díaz Rodríguez v. García Neris*, *supra*, pág. 720.

Por otro lado, cuando un alimentante no reside en nuestra jurisdicción, el TPI puede adquirir jurisdicción sobre este dentro de un procedimiento "para fijar una pensión alimentaria, ejecutar o modificar una orden de pensión alimentaria o para establecer la filiación de un menor" cuando:

> (1) la persona es emplazada personalmente en Puerto Rico;
> (2) **la persona se somete voluntariamente a la jurisdicción, en forma expresa o tácita, al consentir o comparecer o al presentar una alegación respondiente que tenga el efecto de renunciar a la defensa de falta de jurisdicción sobre su persona**;
> (3) la persona residió en Puerto Rico con el menor;
> (4) la persona residió en Puerto Rico y proveyó gastos prenatales o alimentos para el menor;
> (5) el menor reside en Puerto Rico como resultado de actos o directrices de la persona;
> (6) la persona sostuvo relaciones sexuales en Puerto Rico y el menor pudo haber sido concebido de esa relación sexual;
> (7) la persona reconoció e inscribió al menor conforme dispone la ley; o
> (8) existe cualquier otro fundamento consistente con la Constitución del Estado Libre Asociado de Puerto Rico y de los Estados Unidos para adquirir jurisdicción sobre la persona.
>
> Sección 101 de la *"Ley Interestatal Uniforme de Alimentos entre Parientes"* (Ley Interestatal), Ley Núm. 180 del 20 de diciembre de 1997, según enmendada, 8 LPRA sec. 542. (Énfasis suplido).

### III.

En el presente caso, nos toca dirimir si el foro primario incidió al expresar carecer de jurisdicción sobre la persona del Sr. Meléndez Figueroa, al no emitir una orden de desacato y arresto contra este ni ordenar el registro de la determinación de arresto en el Estado de Florida.

Inconforme con el dictamen recurrido, la Sra. Colón Jiménez señaló al foro primario por negarse a emitir una orden de pensión alimentaria y otra por desacato civil y arresto, al igual que por incumplir con el método adoptado en Puerto Rico para lograr

registrar en el Estado de Florida. Asimismo, adujo que el TPI erró al ignorar el procedimiento llevado previamente por la Sala Superior de Guayama, quien había adquirido jurisdicción sobre la persona del Sr. Meléndez Figueroa.

Tras un análisis objetivo y cuidadoso, resolvemos que el foro primario sí cometió uno de los señalamientos de error, específicamente el que se refiere a su jurisdicción.

Por lo tanto, como asunto de umbral, procede dirimir, en primer lugar, si el foro primario, Sala Superior de *Caguas*, ostentaba jurisdicción sobre la persona del Sr. Meléndez Figueroa. Según la Sección 101 de la Ley Interestatal, *supra*, sec. 542, el TPI puede adquirir jurisdicción sobre un alimentante no residente dentro de un procedimiento "para fijar una pensión alimentaria, ejecutar o modificar una orden de pensión alimentaria o para establecer la filiación de un menor" cuando:

> (1) la persona es emplazada personalmente en Puerto Rico;
> (2) **la persona se somete voluntariamente a la jurisdicción, en forma expresa o tácita, al consentir o comparecer o al presentar una alegación respondiente que tenga el efecto de renunciar a la defensa de falta de jurisdicción sobre su persona**;
> (3) la persona residió en Puerto Rico con el menor;
> (4) la persona residió en Puerto Rico y proveyó gastos prenatales o alimentos para el menor;
> (5) el menor reside en Puerto Rico como resultado de actos o directrices de la persona;
> (6) la persona sostuvo relaciones sexuales en Puerto Rico y el menor pudo haber sido concebido de esa relación sexual;
> (7) la persona reconoció e inscribió al menor conforme dispone la ley; o
> (8) existe cualquier otro fundamento consistente con la Constitución del Estado Libre Asociado de Puerto Rico y de los Estados Unidos para adquirir jurisdicción sobre la persona.

(Énfasis suplido).

El pleito de marras tiene su génesis el 10 de mayo de 2024 cuando la Sra. Colón Jiménez radicó una *Moción de revisión de pensión* ante el foro primario, Sala Superior de *Guayama*. Ulteriormente, y estando el Sr. Meléndez Figueroa fuera de la

jurisdicción de Puerto Rico, <u>este radicó</u> una *Urgente moción* el 1 de julio de 2024 donde informó haber pagado una suma de $8,650.00, cantidad reclamada por la Sra. Colón Jiménez. Además, <u>participó</u> de una vista sobre el estado procesal del caso presidida por la Examinadora de Pensiones Alimentarias. Es decir, el Sr. Meléndez Figueroa se sometió voluntariamente a la jurisdicción del foro primario, Sala Superior de *Guayama*, de forma tácita al presentar la antedicha moción y al comparecer a la vista.

Luego de múltiples trámites, el TPI, Sala Superior de *Guayama*, trasladó el caso a la Sala Superior de Caguas. Este último emitió una *Resolución* el 26 de enero de 2026 donde expuso "V[È]ASE RESOLUCI[Ó]N DEL 15 DE NOVIEMBRE DE 2024. ESTE TRIBUNAL NO TIENE JURISDICCI[Ó]N SOBRE LA PERSONA".[18]

Es harto conocido que, los tribunales deben ser celosos guardianes de su jurisdicción y, consiguientemente, deben atender con preferencia los asuntos concernientes a esta. *R & B Power, Inc. v. Junta de Subastas de la Administración de Servicios Generales*, 213 DPR 685, 698 (2024); *Torres Alvarado v. Madera Atiles*, 202 DPR 495, 500 (2019). En otras palabras, los tribunales tienen la responsabilidad indelegable de examinar primeramente su propia jurisdicción, así como la del foro de donde procede el recurso ante su consideración. *Torres Alvarado v. Madera Atiles*, *supra*, pág. 500. Lo anterior, pues la ausencia de jurisdicción conlleva una serie de consecuencias. *Allied Management Group, Inc. v. Oriental Bank*, 204 DPR 374, 386 (2020).

Con relación a las pensiones alimentarias, nuestro máximo foro ha resuelto que "nada hay en dichas decisiones [del Tribunal Supremo de Puerto Rico], ni en la ley, que impida a un tribunal – iniciada una acción para el aumento de pensión alimentaria–

---

[18] *Íd.*, Apéndice II.

disponer incidentalmente el pago de aquellas pensiones que después de iniciado el procedimiento haya dejado de satisfacer el demandado, <u>bien si la pensión cuyo aumento se solicita ha sido fijada previamente por decreto judicial</u> o bien si ha sido convenida extrajudicialmente antes, como en este caso. <u>Lo propio es que el mismo tribunal que ventila el derecho de un menor a mayores alimentos, haga efectivo el derecho de ese menor a las pensiones alimentarias no satisfechas desde que se inició el procedimiento judicial, sin imponerle el oneroso trámite de tener que acudir necesariamente a un pleito plenario</u>". *Rodríguez v. Morales*, 72 DPR 35, 41 (1951) (Énfasis suplido).

Precisamente, el caso instado por la Sra. Colón Jiménez fue en concepto de aumento de pensión alimentaria. Sin embargo, por medio de la *Orden* el 25 de febrero de 2025, el foro primario, Sala Superior de *Guayama*, ordenó al <u>Sr. Meléndez Figueroa para cumplir con el pago total de pensión alimentaria adeudada</u>, dentro de quince (15) días, so pena de señalar vista de desacato o de mostrar causa, y encontrarlo incurso en desacato y ordenar su arresto hasta el saldo total de la deuda. Además, expuso mediante la misma que:

> De realizar el pago dentro de dicho término, deberá evidenciar el mismo mediante Moción al Tribunal acompañando copia del recibo de pago y/ o **Certificación de deuda de la Administración para el Sustento de Menores (ASUME)** en cero balances.

> Se **ORDENA a** la parte Alimentista que, <u>transcurrido el término concedido sin que la parte Alimentante haya realizado el pago, deberá informarlo al Tribunal, incluyendo una Certificación de deuda, Certificación de Cuadre de Caso e Historial de pagos, expedida por la ASUME, si aplica.</u>

> Parte Alimentante, evite ser citado a Sala, se le apercibe que, de no demostrar tener razones justificadas en derecho para ci incumplimiento del pago de la Pensión Alimentaria, será encontrado incurso de desacato y se **ordenará** el arresto e ingreso bajo la

custodia del Departamento de Corrección y Rehabilitación de Puerto Rico.[19]

(Énfasis suplido).

A esos fines, la Sra. Colón Jiménez radicó cuatro (4) mociones expresando el incumplimiento del Sr. Meléndez Figueroa con los pagos de pensión alimentaria, a la que tiene derecho la menor. En particular, informó el 23 de enero de 2026 que la última era por la cantidad presuntamente adeudada de $18,841.96. A tenor con *Rodríguez v. Morales*, *supra*, pág. 41, ciertamente el foro primario podía atender en el mismo pleito de aumento de pensión, el incumplimiento de los pagos de pensión por parte del Sr. Meléndez Figueroa, y más cuando ya se había emitido una orden a esos efectos.

Adviértase además que el traslado de un caso de una sala a otra por falta de competencia no significa que existe falta de jurisdicción, sino que se debe a la forma en que se canaliza el ejercicio de la jurisdicción del tribunal. *Horizon v. JTA. Revisora, RA Holdings*, 191 DPR 228, 235 (2014). La Regla 3.5 de Procedimiento Civil, *supra*, dispone que "[e]n los casos de alimentos, el pleito se tramitará en la sala correspondiente a la residencia de los y las menores". Siendo Cayey la residencia de la menor y la Sra. Colón Jiménez, la sala con competencia era la de Caguas, por lo que correspondía a esta atender las mociones sobre el incumplimiento con la orden emitida por la Sala Superior de Guayama. *Horizon v. JTA. Revisora, RA Holdings*, *supra*, pág. 235; Regla 3.5 de Procedimiento Civil, *supra*.

Por último, toda vez que el TPI no pasó juicio sobre la orden de desacato y el registro de esta en el Estado de Florida, estamos

---

[19] *Íd.*, Apéndice XII.

impedidos de evaluarlos. Por lo cual, procede devolver el pleito de marras al foro *a quo* para que los atienda.

**IV.**

Por las razones discutidas anteriormente, expedimos el auto de *certiorari* y revocamos el dictamen recurrido, a los fines de reconocer la jurisdicción del TPI.

Se devuelve el caso de epígrafe al foro primario para la celebración de una vista de desacato, conforme a la *Orden* emitida el 25 de febrero de 2025, donde las partes puedan presentar sus posturas con relación a las alegaciones de incumplimientos de pagos de pensión por parte del Sr. Meléndez Figueroa.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones